MAINE SUPREME JUDICIAL COURT                      Reporter of Decisions
Decision:      2015 ME 160
Docket:        Wal-15-33
Submitted
 On Briefs:    September 28, 2015
Decided:       December 8, 2015

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

## STATE OF MAINE

v.

## KENNETH A. FAY

MEAD, J.

[¶1]  Kenneth A. Fay appeals from a judgment of conviction of operating under the influence (Class D), 29-A M.R.S. § 2411(1-A)(C)(1) (2012),[1] entered by the trial court (Waldo County, *R. Murray, J.*) after a jury trial.  On appeal, Fay contends that (1) the evidence was insufficient to support the jury's guilty verdict; (2) the court abused its discretion in refusing to grant a mistrial; and (3) the court committed prejudicial error by using a jury verdict form.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  When viewed in the light most favorable to the State, the jury could have rationally found the following facts.  *State v. Lowden*, 2014 ME 29, ¶ 3,

---

[1]  The offense in this case predated the amendment to 29-A M.R.S. § 2411 that increased the mandated loss of license from 90 days to 150 days.  *See* 29-A M.R.S. § 2411(5)(A)(2) (2012) (providing for a ninety-day license suspension).

87 A.3d 694. On July 6, 2012, at around 7:00 p.m., the Belfast Police Department received a complaint describing the erratic operation of a small, red sedan with Pennsylvania license plates. Shortly thereafter, a police officer saw a car matching that description pull into a restaurant parking lot. The officer observed that the driver, Kenneth Fay, was slouched over and moving slowly as he operated the car. After Fay parked the car, he struggled to get out, stumbled, and put his hands on the car for balance.

[¶3] The officer approached Fay and noticed that his breath smelled of alcohol and that his speech was slurred and, at times, incomprehensible. Fay admitted that he had been drinking earlier that day and agreed to perform field sobriety tests. He was unable to perform successfully three field sobriety tests: (1) horizontal gaze nystagmus (HGN); (2) heel-to-toe walk; and (3) one-legged stand. The officer concluded that Fay was impaired, arrested him, and transported him to the county jail, where he refused intoxilyzer and blood tests.

[¶4] The State presented at trial a video recording of Fay's actions during the field sobriety tests. On cross-examination, Fay testified that his eccentric demeanor in the video resulted from never having been "put through that situation" before. In response to that statement, the State's attorney asked Fay, "You never had an interaction with an officer regarding OUI?" Before Fay could answer, defense counsel objected and moved for a mistrial at sidebar on the ground that the

question was substantially prejudicial. The court sustained the objection, but denied the motion for a mistrial. Defense counsel declined a curative instruction.

[¶5] The jury, using a verdict form that both Fay and the State consented to, found Fay guilty of operating under the influence pursuant to 29-A M.R.S. § 2411, and made an additional finding that Fay had failed to submit to an intoxilyzer test. Fay was sentenced to thirteen days in jail, fined $940, and had his license suspended for ninety days.

## II. DISCUSSION

A. Sufficiency of the Evidence

[¶6] Fay asserts that the evidence was insufficient to support the jury's guilty verdict. "When a criminal defendant claims on appeal that the evidence was insufficient to support his conviction, we view the evidence in the light most favorable to the State in determining whether the fact-finder could rationally have found each element of the offense beyond a reasonable doubt." *State v. Reed*, 2013 ME 5, ¶ 9, 58 A.3d 1130 (quotation marks omitted).

[¶7] Fay contends that the evidence was insufficient to support a conclusion that he was under the influence of intoxicants specifically because the field sobriety tests did not strictly comply with the National Highway Traffic Safety Administration (NHTSA) training manual. A police officer's failure to strictly adhere to the specific procedures promulgated by NHTSA does not render

4

evidence regarding those field sobriety tests inadmissible or without value in determining whether a suspect is under the influence of intoxicants. The use of alternative approaches might be relevant to the weight the jury places upon that evidence, but that is a matter that can be addressed through cross-examination. Thus, a fact-finder may consider a suspect's unsatisfactory performance of field sobriety tests as evidence of intoxication, notwithstanding variations in the administration of those tests.

[¶8] In addition to Fay's poor performance on the field sobriety tests, the jury had additional evidence before it allowing it to rationally find Fay guilty of operating under the influence and refusing to submit to an intoxilyzer test. The jury heard Fay testify during direct and cross-examination that he drank before driving, drank while driving, and that he refused the intoxilyzer test. The jury heard the officer's testimony that Fay had (1) a half-consumed beer in his car; (2) an odor of alcohol on his breath; (3) slurred and incomprehensible speech; (4) bloodshot and glassy eyes with droopy eyelids; and (5) slow and lethargic movements. The evidence is sufficient to support the jury's verdict. *See State v. Soucy*, 2012 ME 16, ¶¶ 13-14, 36 A.3d 910; *State v. Melanson*, 2002 ME 145, ¶¶ 8-10, 804 A.2d 394; *State v. Jordan*, 599 A.2d 74, 76 (Me. 1991).

B.     Denial of Motion for Mistrial

[¶9]   Fay asks us to conclude that the trial court abused its discretion in refusing to grant a mistrial after the State's attorney asked Fay about prior interactions with police officers in the context of OUI offenses.  We review the denial of a motion for a mistrial for an abuse of discretion "[b]ecause the trial court has a superior vantage point . . . ."  *State v. Logan*, 2014 ME 92, ¶ 14, 97 A.3d 121 (quotation marks omitted).  "We will overrule the denial of a mistrial only in the event of exceptionally prejudicial circumstances or prosecutorial bad faith."  *Id.* (quotation marks omitted).

[¶10]   The trial court committed no abuse of discretion in denying the motion for a mistrial.  The unanswered question was not asked in bad faith nor was it particularly prejudicial.  In so concluding, we note that (1) the question was never answered; (2) the question did not inherently suggest a prior conviction; and (3) defense counsel rejected any potential curative instruction.  *See Jamshidi v. Bowden*, 366 A.2d 522, 524 (Me. 1976) ("[W]e look upon defense counsel's decision to stake his all on being right in his claim of the necessity for a mistrial, and his consequent refusal to agree to a curative instruction by the presiding Justice, as a tactical choice by which he assumed the risk of being wrong.  Hence, defendant may not now complain, on appeal, of potential prejudice resulting from his own trial tactics.").

6

[¶11]  Fay suggests that the State's attorney asked the question about prior interactions with police officers in bad faith.  At sidebar, however, the State's attorney represented to the court that he was prepared to offer a certified copy of a previous, out-of-state OUI conviction to rebut Fay's answer that he had "never been put through that situation" before.  Although the trial court ultimately sustained Fay's objection, the record does not suggest that the question was asked in bad faith.

C.    Jury Verdict Form

[¶12]  Fay asserts that the court committed prejudicial error by using a jury verdict form because, he alleges, the form provided no guidance on the jury's ability to find the defendant guilty of OUI but not guilty of the refusal enhancement.  Because Fay's counsel expressly consented to the use of the verdict form at trial, we review this issue for obvious error.  *Sullivan v. Porter*, 2004 ME 134, ¶ 24, 861 A.2d 625.

[¶13]  An error is "obvious" if it is "(1) an error, (2) that is plain, . . . (3) that affects substantial rights[,] . . . [and] (4) the error seriously affects the fairness and integrity or public reputation of judicial proceedings."  *State v. Pabon*, 2011 ME 100, ¶ 29, 28 A.3d 1147.  "An error affects a criminal defendant's substantial rights if the error was sufficiently prejudicial to have affected the outcome of the proceeding."  *State v. Dolloff*, 2012 ME 130, ¶ 37, 58 A.3d 1032

(alteration omitted) (quotation marks omitted). Fay has the burden to demonstrate obvious error. *Id.* ¶ 39.

[¶14] The use of verdict forms in criminal trials is a common practice because they are "useful to determine if sentencing or crime classification enhancement elements have been proven." Alexander, *Maine Jury Instruction Manual* § 5-4A at 5-8 (2015 ed.). We have cautioned, however, that a verdict form is incompatible with Maine criminal practice to the extent that it will "lead the jurors down the guilty trail," *State v. McNally*, 2007 ME 66, ¶ 9, 922 A.2d 479 (quotation marks omitted), or require "the jury to state the reason or reasons for its not-guilty verdict," *State v. Fournier*, 554 A.2d 1184, 1188 (Me. 1989). To protect against these concerns, "a form is best limited to direct questions that simply ask the jury to report whether they find the defendant guilty or not guilty as to each charge." *McNally*, 2007 ME 66, ¶ 9, 922 A.2d 479.

[¶15] We conclude that there was no error in the use of the jury verdict form. Contrary to Fay's contention, the jury was not compelled to find Fay guilty of the refusal enhancement after finding him guilty of OUI because the form, by its plain terms, makes clear that the refusal enhancement is a separate and distinct finding. The verdict form explicitly states "[i]f the Jury's verdict is Guilty [of OUI], then please answer the following question. If the Jury's verdict is Not

Guilty, do not answer the following question." Because the following question was answerable "yes" or "no," the jury was free to reject the refusal enhancement.

[¶16] The use of the verdict form in this case was entirely appropriate because it protected Fay's right to a jury finding on the sentencing enhancement for a refusal to submit to an intoxilyzer. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("[A]ny fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); *see also Alexandre v. State*, 2007 ME 106, ¶¶ 15-16, 927 A.2d 1155. The design of the form used here complied with our guidance in *State v. McNally*, 2007 ME 66, ¶ 9, 922 A.2d 479, because it simply stated the options of "guilty" or "not guilty" of operating under the influence of intoxicants. With respect to the intoxilyzer refusal enhancement, the form separately asked a "yes" or "no" question. We find no error and commend the use of such verdict forms.

The entry is:

Judgment affirmed.

_____

**On the briefs:**

William F. Pagnano, Esq., Rockland, for appellant Kenneth A. Fay

Neil E. McLean Jr., Asst. Dist. Atty., Belfast, for appellee State of Maine

Waldo County Superior Court docket number CR-2014-227
FOR CLERK REFERENCE ONLY